United States District Court          Eastern District of Pennsylvania

Tracy Jordan                          Docket/Case No.: 16-cv-2784

S.C.I. Coal Township                  D.O.C.# GV-8258

---

Petitioner                            Respondent

Tracy Jordan          v.              Superintendent McGinley

                                      District Attorney: Philadelphia Cnty.
                                                    and
                                      Attorney General: Pennsylvania

---

MEMORANDUM OF LAW IN SUPPORT OF PETITIONER'S
28 U.S.C. § 2254 WRIT OF HABEAS CORPUS

I. LEGAL STANDARDS FOR HABEAS CORPUS PETITIONS

Petitioner's habeas petition is governed by the Antiterrorism and Effective
Death Penalty Act of 1996 ("AEDPA"). A petitioner must exhaust all remedies
available to him in state court before filing a habeas petition. 28 U.S.C.
§ 2254(b)(1)(A).

§ 2254 (d)-An application for a writ of habeas corpus shall not be
granted with respect to any claim that was adjudicated on the merits in state
court proceedings unless the adjudication of the claim that:

> (1) resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as
> determined by the Supreme Court of the United States; or (2)
> resulted in a decision that was based on an unreasonable deter-
> mination of the facts in light of the evidence presented in the
> state court proceeding.

The Supreme Court has instructed that the "contrary to" and "unreasonable
application" clauses in Section 2254 (d)(1) should be viewed independently.
Williams v. Taylor, 529 U.S. 362 (2000).

> Under the "contrary to" clause, a federal court may grant the writ
> if the state court arrives at a conclusion opposite to that reach-
> ed by this Court on a question of law or if the state court
> decides a case differently than this Court has on a set of materially
> indistinguishable facts. Under the "unreasonable application" clause,
> a federal court may grant the writ if the state court identifies
> the correct governing principle from this Court's decisions but

> unreasonably applies it to the facts of the particular case; or
> 'the state court either unreasonably extends a legal principle from
> our precedent to a new context where it should apply." "Appel v.
> Horn, 250 F.3d 203, 209 (3d.Cir 2001)(quoting Williams, 529 U.S.
> at 407).

A federal court may not issue writ simply because that court concludes "that
the relevant state-court decision applied clearly established federal law
erroneously or incorrectly:" Williams, 529 U.S. at 411. Relief is appropriate
only where the state-court decision also is objectively unreasonable. The
Third Circuit of Appeals recently described this "highly deferential standard"
as follows:

> "We will not surmise whether the state-court reached the best or
> even the correct result in a case; rather, we will determine only
> whether the state-court's application of federal law was unreason-
> able." "Collins v. Sec'y of the Pa. Dep't of Corr., 742 F.3d 528,
> 544 (3d Cir.)

With respect to 28 U.S.C. § 2254(d)(2), which dictates that federal habeas
relief may be granted when the state-court's adjudication was based on an
unreasonable determination of the facts in light of the evidence presented,
the petitioner must demonstrate that a reasonable fact-finder could not have
reached the same conclusions given the evidence. If a reasonable basis exist-
ed for the factual findings reached in the state-courts, then habeas relief
is not warranted. Miller-El v. Cockrell, 537 U.S. 322, 340 (2003).
Additionally, "a determination of a factual issue made by a state-court shall
be presumed to be correct. The applicant shall have the burden of rebutting
the presumption of correctness by clear and convincing evidence." 28 U.S.C.
§ 2254(e)(1). See Roundtree v. Balicki, 640 F.3d 530, 537 (3d Cir.)
If the applicant has failed to develop the factual basis of a claim in state
court proceedings, the court shall not hold an evidentiary hearing on the
claim unless the applicant shows that the claim relies on a new rule of
constitutional law, made retroactive to cases on collateral review by the
Supreme Court, that was previously unavailable; or a factual predicate that
could not have been previously discovered through the exercise of due diligence;
and the facts underlying the claim would be sufficient to establish by clear
and convincing evidence that but for constitutional error, no reasonable

2

fact-finder would have found the applicant guilty of the underlying offense.

II. PRO-SE PETITIONERS

A pro se pleading is held to less stringent standards than pleadings drafted by attorneys. Estelle v. Gamble, 429 U.S. 97 (1976)  Thus a pro se habeas petition should be construed liberally. See Royce v. Hahn, 151 F.3d 116, 118 (3d Cir.1998)

III. PETITIONER'S CLAIMS

All three (3) of the issues that petitioner (Jordan) raises fall under the ineffectiveness of trial counsel (IAC), therefore they are governed by the legal principles established in, Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052. Strickland has two components:

> (1) a petitioner must show that counsel's performance was deficient; and (2) that deficiency prejudiced the defense.

T establish deficient performance, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness". The Court declined to articulate specific guidelines for appropriate attorney conduct and instead have emphasized that "the proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Both counsel and the Courts must recognize that the main issue is whether the accused rights have been adequately protected.

To prove prejudice, "the defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." A "reasonable probability is a probability sufficient to undermine confidence in the outcome." When a defendant challenges a conviction, this means that absent the error "the fact-finder would have had a reasonable doubt respecting guilt." 466 U.S. at 695. "Reasonable probability" is an imprecise term. Clearly, however, it does require that the defendant prove more than that the error "had some conceivable effect on the outcome of the proceeding", but does not require that he show that it is more likely than not that counsel's deficient conduct changed the outcome.

3

The Strickland standard of review is followed by PA courts in, Commonwealth
v. Pierce, 527 A.2d 973. Appellant must show that the act of omission or
commission by counsel was arguably ineffective and that he was prejudiced
thereby. That is, whether counsel's conduct had an adverse effect on the out-
come of the proceedings. In Pierce, to prevail on a claim of (IAC), appellant
must overcome the presumption that counsel is effective by establishing all
of the following elements:

> 1. the underlying legal claim has arguable merit; 2. counsel had
> no reasonable basis for his or her action or inaction; and, he
> suffered prejudice because of counsel's ineffectiveness.

Essentially, there are two prongs to this test, performance and prejudice.
 A seriously prejudicial mistake in the course of otherwise effective representation
can require that a conviction be overturned. Likewise, cumalative counsel
error may require a new trial. See, e.g., Williams v. Taylor, 529 U.S. 362,
396-398, 120 S.Ct. 1495.

    A. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO LITIGATE VIOLATIONS OF
    HIS CLIENT'S FOURTH AND FIFTH U.S. CONSTITUTIONAL RIGHTS AND THE TRIAL
    COURT ABUSED IT'S DISCRETION FOR FAILURE TO GRANT RELIEF
A Reversal and Remand Order was granted by the intermediate court on this
particular issue. The Order was for the trial court to ascertain:

> 1. If there was a custodial interrogation?; 2. What were trial
> counsel's reasons for failing to file a suppression motion?

In relation to the first question, under the Pierce standard, the trial court
concluded that Jordan established the first prong but failed to establish
the second and third prongs. The intermediate court failed to disturb the
trial court's findings as they pertain to this issue.
Both lower court's findings only take into account the testimony of trial
counsel and their decision was based on an unreasonable determination of
the facts in light of the evidence presented in the state court proceeding
and resulted in a decision that was contrary to, or involved an unreasonable
application of, clearly established Federal law, furthermore both court's
application of federal law is "objectively unreasonable".
Before addressing the above claims, Jordan, it is important to note that
there was no full and fair opportunity to litigate Jordan's Fourth Amendment

4

claim in the state-court.

The U.S. Supreme Court did not expressly articulate what it means to have a full and fair opportunity to litigate a Fourth Amendment claim in state court. However, the Court cited its prior decision in Townsend v. Sain, 372 U.S. 293 (1963). In Townsend, the Court held that a full and fair hearing does not occur if:

> 1) the merits of the factual dispute were not resolved in the state hearing; 2) the state factual determination is not fairly supported by the record as a whole; 3) the fact-finding procedure employed by the state was not adequate to afford a full and fair hearing; 4) there is a substantial allegation of newly discovered evidence; 5) the material facts were not adequately developed at the state court hearing; 6) for any reason the state trier of fact did not afford the habeas applicant a full and fair hearing.

Jordan asserts that he was placed under de facto arrest and questioned while in custody without the requisite warnings. The government bears the burden of demonstrating the lawfulness of the challenged conduct. U.S. v. Baldacchino, 762 F.2d 170,175. The general federal rule on who bears the burden of proof with respect to an allegedly illegal search or seizure is based on the warrant-no warrant dichotomy: If the search or seizure was affected pursuant to a warrant, the defendant bears the burden of proving its illegality; if the police acted without a warrant, the prosecution bears the burden of establishing legality. See also, e.g., U.S. v. Koerth, 315 F.3d 862.

Jordan argues the the Commonwealth waived any argument on the issues of "illegal detention" or "custodial interrogation" when they failed to meet the above listed burden which was surely theirs. There was a dispute between the two parties at the 12/16/13 hearing as to which party bears the burden. There was no direction from the trial court as to which party actually has to bear the above burden.

The attorney for the government made a conscious choice of waiver when asked explicitly about bearing her burden when she responded to the court's inquiry:

> "Your Honor, I plan to go under the reasonable basis prong of the ineffectiveness test." (Transcript 12/16/13, p.3)

5

The prosecution also failed to argue against this particular issue in the trial court before the court filed it's motion to dismiss pursuant to R.907. The burdened party cannot possibly meet the required criteria by examining trial counsel as to what he remembers about what he was told by his client seven (7) to eight (8) years before. Counsel brought no records or discovery materials to the hearing to aid him in his testimony although it had been seven (7) years since his representation of this particular client ended. (Transcript 12/16/13, p.12)  Finally, trial counsel was not present on the day in question, November 18, 2004.  Therefore, according to <u>Townsend</u> a full and fair opportunity did not occur in relation to 1,2,3,5 and 6.

Let us examine the encounter between police and the citizen/petitioner.
<u>Time line of Events from 11/18/04</u>
At approximately 4:45 p.m., the police, while investigating a robbery/ homicide came to citizen/Jordan's residence, without a warrant. When the front door is opened resident is confronted by Detective Griffin brandishing a revolver. Griffin called Detective Cruz on the radio and stated, "I got him, come around front." Both agents came into the residence after holstering the weapon, and stated their purpose for being there. They stated that a piece of evidence was recovered from a murder scene containing Jordan's fingerprint. Agents asked if Jordan knew how his fingerprint came to be on the plastic bag. He replied that he had heard about the crime but did not know how his print came to be on the bag. Agents asked if Jordan could go with them to their headquarters for questioning. Jordan asked if he could drive his own vehicle. (Certified Record Vol.2 p.212) This request was denied. After transporting him to their offices, he was relieved of his cellphone, wallet and keys, and placed in a secure room for questioning.

While being held incommunicado in a secure room, the interrogation encompassed forty five (45) questions, the fortieth being the request to search Jordan's home for a laptop computer that was taken from the decedent. Jordan requested to be present at his home during the search. This request was denied. Jordan also requested to call his wife, so she would not be

6

alarmed by the police coming to their home, this request was denied. Jordan
was locked in an interrogation room while agents went to search his home.
(Certified Record Vol.1 p.196)  Four agents went to Jordan's home, interviewed
his wife and searched his home. It was noted on "Investigation Interview
Record" that Agent Gross, inspected the two firearms that were in the home.
The duty weapon of Mrs. Jordan and the other pistol belonging to Jordan.
Nothing was seized from Jordan's home that day. Agents had Mrs. Jordan sign
the Consent Form that had been signed by her husband. Petitioner was returned
to his residence at approximately 11:00 p.m. .

UNDER THE FEDERAL AND STATE CATEGORIES OF INTERACTION BETWEEN POLICE

AND CITIZENS, WHERE DOES THE ENCOUNTER WITH PETITIONER FALL?

In order to determine whether a particular encounter constitutes a seizure/
detention, "a court must consider all circumstances surrounding the encounter
to determine whether the police conduct would have communicated to a reasonable
person that the person was not free to decline the officer's request or
otherwise terminate the encounter." Commonwealth v. Lewis, 535 Pa. at 509,
636 A.2d 623 quoting Florida v. Bostick, 501 U.S. 429; Kaupp v. Texas, 538
U.S. 626.

The Fourth Amendment to the U.S. Constitution states:

> The right of the people to be secure in their persons, houses,
> papers, and effects, against unreasonable searches and seizures,
> shall not be violated, and no warrants shall issue, but upon
> probable cause, supported by Oath or affirmation, and particularly
> describing the place to be searched, and the person or things to
> be seized.

Fourth Amend. jurisprudence sets forth (3) categories of interaction between
citizens and the police:

> 1. mere encounter- which need not be supported by any level of
> suspicion, but carries no official compulsion to stop or respond,
> Florida v. Royer, 460 U.S. 491, 103 S.Ct. 1319 (1983)

> 2. "investigative detention"- must be supported by reasonable
> suspicion; it subjects a suspect to a stop and a period of detention,
> but does not involve such coercive conditions as to constitute the
> functional equivalent of an arrest. Terry v. Ohio, 392 U.S. 1,
> 88 S.Ct. 1868 (1968)

7

3. an arrest or "custodial detention"- must be supported by prob.
cause. Dunaway v. State of New York, 442 U.S. 200, 99 S.Ct. 2248
(1979)

The Fourth Amend. and the substantial expectation of privacy in one's home
limit the situations where the police may make a warrantless arrest of an
individual in their home. Absent exigent circumstances, the Fourth Amend.
and the substantial expectation of privacy in one's home requires an arrest
warrant, before a person can be legally arrested in their home. Amendments
guarantee against unreasonable seizures of persons was analyzed in terms of
arrest, prob. cause for arrest, and warrants based on such prob. cause. The
term "arrest" was synonymous with seizures governed by the Fourth Amend..
While warrants were not required in all situations, the requirement of prob.
cause, as elaborated in numerous precedents, was absolute.

An arrest is defined as any act that indicates an intention to take the
person into custody and subjects him to the actual control and will of the
person making the arrest. The test is an objective one, i.e., viewed in the
light of the reasonable impression conveyed to the person subjected to the
seizure rather than the strictly subjective view of the officers or the
the person being seized. The facts of the instant case indicate an intention
by police to take Jordan into custody and subject him to their actual control
and will.

The Dunaway Court, held that custodial questioning on less than prob. cause
for arrest was violative of the Fourth Amend.; link between improper police
conduct and evidence obtained as a result, held insufficiently attenuated
to permit use of evidence.

The Fourth Amend.'s proscription apply to the States through the Fourteenth
Amend.. Evidence obtained as a result of an unlawful search and seizure in
generally inadmissible in the state criminal trials under the due process
clause. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684 (1961). States may make
their own rules and tests for reasonableness as long as they do not infringe
on the guarantees embodied in the Fourth and Fourteenth Amendments.

The interaction between Jordan and the police can only be categorized as an arrest or "custodial detention", when without a warrant or necessary prob. cause to make a seizure of his person, did seize him by their show of force and authority, declining him the freedom of movement by transporting him to their office and locking him in an interrogation room. Wong Sun v. U.S., 371 U.S. 471. "The history of the use, and not infrequent abuse, of the power to arrest cautions that a relaxation of the fundamental requirements of prob. cause would leave law-abiding citizens at the mercy of the officer's whim or caprice!" Brinegar v. U.S., 338 U.S. 160, 176.

The lower courts did not apply the proper standard/test to this Fourth Amend. claim. Their adjudication is in violation of § 2254(d)(1) and(2). To be constitutionally valid, an arrest must be based upon prob. cause whether it is an arrest with a warrant or without. Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317 (1983). (Gates totality of the circumstances test applies to warrantless arrest). Article 1, §8 of the PA Constitution is satisfied by the Gates totality of the circumstances test. Commonwealth v. Gray, 509 Pa. 476, 503 A.2d 921 (1985)

The Gates test is the same whether the court is determining if an issuing authority had prob. cause to make a warrantless arrest. The usual deference given to an issuing authority's prob. cause determination on a warrant will not be afforded a police officer's decision that prob. cause exists to make a warrantless arrest. Commonwealth v. Baker, 532 Pa.121, 127, 615 A.2d 23, 25 (1992)

Even under Pennsylvania constitutional protections the encounter between the police and Jordan can only be classified a s an unlawful seizure. In accordance with the protections afforded our citizens under Art. 1, §8, we have recognized only two instances where police may "seize" an individual; both require an appropriate showing of antecedent justification: first, an arrest based upon prob. cause, Commonwealth v. Duncan, 514 Pa.395, 525 A.2d 1177 (1987); second, a 'stop and frisk' based upon reasonable suspicion. Commonwealth v. Hicks, 434 Pa.153, 253 A.2d 276 (1969).

The following actions do not give prob. cause to arrest: flight alone, mere presence at the scene of a crime, good faith suspicion that the defendant

9

committed the crime. Commonwealth v. Mackie, 456 Pa.372, 320 A.2d 842 (1974). The PA Supreme Court has made it clear that the right to be free from un- reasonable searches and seizures contained in PA Constitution Art. 1, §8 is unshakably linked to a right of privacy in the Commmonwealth. Commonwealth v. Hawkins, 553 Pa.76, 718 A.2d 265; Commonwealth v. Mason, 535 Pa.560, 637 A.2d 251; Commonwealth v. Edmunds, 526 Pa.374, 586 A.2d 887.

The actions by police in this case before the court are not new, In Brown v. Illinois, 422 U.S. 590, 95 S.Ct. 2254, the Court disapproved of arrests made for "investigating" purposes on less than prob. cause. The illegality here mimics Brown. The arrest, both in design and in execution, was investigatory. The detectives embarked upon an expedition for evidence in the hope that something might turn up. After questioning Jordan about the weapons in his home, the police had to search his home but did not have the legal right to do so.

The Fourth Amend. violation led directly to the Fifth Amend. violation.

> Amendment 5 of the U.S. Constitution

>> No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb; nor shall be compelled in any criminal case to be witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation.

In Miranda v. Arizona, 384 U.S. 436 (1966), the Supreme Court held:

> The prosecution may not use statements, whether exculpatory or inculpatory, stemming from questioning initiated by law enforcement officers after a person has been taken into custody or otherwise deprived of his freedom of action in any significant way, unless it demonstrates the use of procedural safeguards effective to secure the Fifth Amendment's privilege against self-incrimination.

A person is considered to be in custody for the purposes of Miranda when the officers show of authority leads the person to believe that he was not free to decline the officer's request, or otherwise terminate the encounter. Commonwealth v. Witherspoon, 756 A.2d 677.

In the instant case questioning was initiated by police after Jordan was taken into custody or otherwise deprived of his freedom of action in a significant way and failed to demonstrate the use of procedural safeguards, Miranda warnings.

The test to determine custodial interrogation does not depend upon the subjective intent of the interrogator, but rather the reasonable belief of the individual being interrogated, that their freedom of action is being restricted. Commonwealth v. Williams, 539 Pa.61, 650 A.2d 420, 427 (1994). The facts of this case can only be construed by a reasonable citizen that he was not free to decline these officers request.

Trial counsel gave two (2) reasons for not filing a suppression motion for the acts of the police in this particular case:

> 1. The statement to the police was exculpative. (Transcript 12/16 13, pg(s) 8 & 27)
> 2. In his legal opinion there was no custodial interrogation.

As far as the statement being exculpative, that reasoning is insufficient when faced with the holding by the Miranda Court. His legal opinion as far as custody goes is equally ineffective as the law reads.

Trial counsel's understanding of the law is that, if the statement taken by police had been deemed inadmissible, the prosecution could have still used the statement for impeachment purposes. (Transcript 12/16/13, p.28), once again he is incorrect. By his own testimony the statements to the police were truthful, there are no legal exceptions that would allow a prosecutor to impeach a defendant with the truth, although that is exactly what happened in the instant case. The trial court's judgment was based on trial counsel's misguided opinions which were not legally based, therefore the lower court's judgment cannot be legally based.

Miranda went further, the privilege against self-incrimination protects the individual from being compelled to incriminate himself in any manner; it does not distinguish degrees of incrimination. Similarly, for precisely the same reason, no distinction may be drawn between inculpatory statements and statements alleged to be merely "exculpatory". If a statement made were

11

in fact truly exculpatory it would, of course, never be used by the prosecutor.
In fact, statements merely intended to be exculpatory by the defendant are
often used to impeach his testimony at trial or to demonstrate untruths in
the statement given interrogators and thus to prove guilt by implication.
These statements are incriminating in any meaningful sense of the word and
may not be used without the full warnings and effective waiver required
for any other statement.  In the instant case the prosecutor told the fact-
finder that Jordan was untruthful in his statements to the police, he even
stated that he had evidence to prove it. (Certified Record Vol.2 p.177) The
prosecutor never entered any document into the record nor did he bring in
any custodian, to prove his attack on the defendant's credibility. A timely
suppression motion would have removed these statements from the prosecutor's
ability to use them and trial counsel would have been "protecting" his client's
rights and he would have been acting as a true advocate.

Had a motion to suppress been filed on the above violations a lot more than
just Jordan's statements would not have been available to the prosecution's
case.

The legality of an arrest may be important in determining what evidence is
admissible at trial because physical evidence, identifications, or confessions
seized or obtained as a result of an unlawful arrest are normally not
admissible at trial. When the conditions of the unlawful arrest amount to
"outrageous conduct", the courts may inquire into the circumstances of the
arrest in order to determine whether the person of the defendant should be
excluded from evidence and the defendant thereby discharged. Commonwealth
v. Fiume, 436 A.2d 1001 (1981) In the instant case to forgo this opportunity
could only be deficient performance and prejudicial to the defendant.

The existence or nonexistence of probable cause can only be decided in the
concrete factual context of each case. Sibron v. New York, 392 U.S. 40, 88
S.Ct. 1889 (1968). When an accused seeks to suppress the fruits of an
allegedly illegal arrest, the Commonwealth has the burden of establishing,
with reasonable certainty, that prob. cause for the arrest existed. Common-
wealth v. Barnet, 484 Pa.211, 398 A.2d 1019 (1979)

Absent exigent circumstances, the Fourth Amend. and the substantial expectation of privacy in one's home require an arrest warrant, before a person can be legally arrested in their home. Payton v. New York, 445 U.S. 573, 100 S.Ct. 1371 (1980).

UNDER WHAT FEDERAL OR STATE LEGAL AUTHORITY HAD THE POLICE TO HOLD PETITIONER AT THEIR HEADQUARTERS WHILE HIS HOME WAS BEING SEARCHED?

The Consent to Search appears to be the document on which they rely. This is legal folly. The request for the consent was made while Jordan was still in custody. To affirm this fact, the reviewing Court, need only look to three (3) documents and a bit of testimony:

1. Form 75-229, "Biographical Information" (Commonwealth Exhibit C-45) *Note the time- 5:45 p.m.
2. Form 75-483, "Investigation Interview Record" (Com. Ex. C-61 aka C-1 from 12/16/13) *Note the time- 6:20 p.m.
3. "Consent to Search Form", (Defense Exhibit D-1 from 12/16/13) *Note the time- 8:14 p.m.
4. Detective Griffin testifying to the above fact. (Certified Record Vol.1 p.196)

Jordan argues this Consent cannot be considered voluntary, which is required by law to be valid. Consent was not voluntary when the following factors were present when the consent was requested:

1. The existence of a prior lawful detention.
2. The withholding of the defendant's documentation.
3. The incommunicado environment that the defendant was placed in.
4. The absence of an express endpoint to the detention in form of an admonition by the authorities that the defendant was free to leave. Commonwealth v. Acosta, 815 A.2d 1078, 1085 (en banc)

Although the above factors were based on a vehicle stop, the principle of law is the same as in the instant case. Jordan argues the detention was not lawful and factors 2-4 were clearly present.

A search conducted without a warrant is deemed to be unreasonable and therefore Constitutionally impermissible, unless an established exception applies. See Schenckloth v. Bustamonte, 412 U.S. 218. One such exception is consent, voluntarily given.

The central Fourth Amend. inquiries in consent cases entail assessment of the constitutional validity of the citizen/police encounter giving rise to the consent; and ultimately, the voluntariness of consent. Under both Fourth Amend. and Art. 1, §8, a search such as the one at issue here, which was

13

conducted without a warrant is deemed per se unreasonable.

Where a consensual search has been preceded by an unlawful seizure the exclusionary rule requires suppression of the evidence obtained absent a demonstration by the government both of a sufficient break in the causal chain between the illegality and the seizure of evidence, thus assuring that the search is not an exploitation of the prior illegality, and of voluntariness. Royer

In Siverthorne Lumber Co. v. U.S., 251 U.S. 385, 392 (1920), the Court held invalid a subpoena that had been issued on the basis of information acquired through an illegal search. Just as the prosecution could not use in court evidence obtained directly from the unconstitutional search, neither would it be allowed to use evidence obtained indirectly via a subpoena based upon that search. The exclusionary rule was applicable to all evidence "tainted" by the unconstitutional search, and that taint extended to evidence subsequently obtained through the use of information acquired during that search.

When an unconstitutional arrest leads directly and immediately to a search the exclusion of evidence seized in that search presents no difficulties. Indeed, a search incident to to an unconstitutional arrest is itself un-constitutional, so the court need not even look to the arrest as the poison tree. Wong Sun excluded from evidence the incriminating statement of one defendant on the ground that it was the fruit of the defendant's illegal arrest.

Brown v. Illinois the defendant was arrested without prob. cause in order to question him concerning a murder. Statements were fruit of the illegal arrest. Miranda warnings are an important factor, to be sure, in determining whether the confession is obtained by exploitation of an illegal arrest. The "impropriety of the arrest was obvious". In the case-at-bar, trial counsel's testimony reveals his lack of legal knowledge and precedent which prejudiced petitioner from the outset of his representation. Based on the above analysis the statement made to the police, all information and evidence stemming from the statement, for example, the two guns found in Jordan's home,

14

and also the statement gathered from Jordan's spouse could have been
suppressed. There's more. A properly filed motion could have suppressed
information gathered from the "Biographical Information Form". See U.S. v.
Guess, 756 F.Supp.2d 730, there exists a "routine booking exception" to
Miranda. Under this exception, certain questions asked for the purpose of
booking a suspect who has been arrested are exempt from Miranda's coverage
and the answers are thus admissible even if no warnings were given. However,
the Supreme Court also noted that the booking exception does not mean, of
course, that any question asked during the booking process falls within
that exception. Without obtaining a waiver of the suspect's Miranda rights,
the police may not ask questions even during booking, that are designed to
elicit incriminating admissions or solely to elicit testimonial evidence
from a suspect.

The Supremem Court further noted that "incriminating response" refers to
"any response-whether inculpatory or exculpatory-that the prosecution may
seek to introduce at trial." Rhode Island v. Innis, 446 U.S. 291, 100 S.Ct.
1682. Ordinarily, the routine gathering of background biographical data will
not constitute interrogation. Yet we recognize the potential for abuse by
law enforcement officers (LEOS) who might, under the guise of seeking
"objective" or "neutral" information, deliberately elicit an incriminating
statement from a suspect. The test is objective. The subjective intent of
the agent is relevant but not conclusive. The relationship of the question
asked to the crime suspected is highly relevant. In the instant-case there
would have been no warrant/subpoenas for phone records and possibly no
prosecution witness named Julius Peurifoy. U.S. v. Ceccolini, constitutional
violation had led to discovery of a prosecution witness. The function of
the exclusionary rule, the Court noted, requires special consideration be
given to the element of "free will" that might be involved in the witness
decision to testify. According to Mr. Peurifoy he did not know why he was
in the courtroom that day, so their was no "free will" in his decision to
testify.

15

In reference to the voluntariness of the statement and actions by Jordan
on the day in question, there is more discussion warranted.

This Court has always set high standards of proof for the waiver of
Constitutional Rights, Johnson v. Zerbst, 304 U.S. 458, and we re-assert
these standards as applied to in-custody interrogation. Since the State is
responsible for establishing the isolated circumstances under which the
interrogation takes place and has the only means of making available
corroborated evidence of warnings given during incommunicado interrogation,
the burden is rightly on their shoulders.  In the case-at-bar the trial
court and the prosecution tried to swithch that burden to petitioner.
(Certified Record Vol.2, p.212):

> Q. You were asked some questions about your statement to detectives.
> You were interviewed by detectives and you went down there
> voluntarily, did you not?
> A. Yes, I did.
> Q. Did you give them any problem or any resistance in your
> cooperation with their investigation?
> A. Originally I had asked to drive my own vehicle down there, but
> it was declined, so I went with them, but, no, I didn't.

> Blacks Law Dictionary Abridged Eighth Edition

> voluntary, 1. Done by design or intention <voluntary act>. 2.Un-
> constrained by interference; not impelled by outside influence
> <voluntary statement>.

Trial counsel confuses acquiescence and voluntariness. It is impossible to
understand what type of resistance counsel was referring to. No reasonable
person would attempt to resist two armed officers without risking grave
danger.

The Court in Kaupp v. Texas, 538 U.S. 626, held that there was no reason
to think the individual's "Okay" answer had been anything more than a mere
submission to a claim of lawful authority. The circumstances are the same
in the present case, a submission by appellant to lawful authority.

    Prejudice

The Court's opinion in Strickland made clear that courts were welcome to
consider the prejudice question before deciding whether counsel's alleged
deficiency fell below an objective standard of reasonableness, if doing so
would make disposition of the case easier. To an even greater degree than

16

determinations of deficient performance, decisions on prejudice are fact specific. The reasonableness of counsel's conduct must be determined on the facts of the particular case, viewed at the time of counsel's conduct and "in light of all the circumstances". There is ample evidence of a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. In U.S. v. Cronic, 466 U.S. 648, 658, 104 S.Ct. 2039, the Court held, "where assistance of counsel has been denied entirely or during a critical stage of the proceeding", when this occurs, the likelihood that the verdict is unreliable is so high that a case-by-case inquiry is unnecessary. "Judicial scrutiny of counsel's performance must be highly deferential" and "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable."

It cannot be reasonable under prevailing professional norms for trial counsel, with over twenty (20) years of experience to not know the criteria for Miranda warnings. It cannot be equally reasonable for counsel not to be aware of his client's rights being violated. The purpose of Miranda and it's progeny were to eradicate police practices that violate constitutional guarantees. For defense counsel to form a defense embracing, not exposing these violations, turns the adversarial process that the trial system is based on, on it's head. Counsel's omissions clearly point to Jordan being without counsel at the outset, and prejudice should be presumed.

It would be nearly impossible to determine if counsel testified truthfully about discussing his strategy with Jordan, because it would be his word against a convicted citizen. He also has that strong presumption in his pocket too. Jordan asserts that through a preponderance of the evidence test, it is more likely than not, that counsel testified falsely. Jordan sat in prison for over seven hundred (700) days awaiting trial, and the only strategy that was ever discussed was alibi. Alibi is what Jordan testified to and alibi was what his witnesses were told by counsel that they would testify to. Witnesses submitted notarized affidavits to that effect during this appeal. One witness stated that on the third day of trial counsel told

17

them that counsel would not be putting them on the stand. The witness asked
counsel if Jordan knew of the change, and counsel replied, "No he doesn't
know, I will tell him when the trial resumes." So his testimony at the 12/
16/13 evidentiary hearing was false. Jordan could not have been "on board"
with the strategy employed if it was changed in the middle of the trial.
The Superior Court confirms that the trial court rejected Jordan's claim
based o failure to establish the second and third prongs of the test to
determine (IAC). By definition, the first prong: (1) that the underlying
claim has merit, was proven. The significance of this revelation was lost
on the trial court and the reviewing panel.
The underlying claim was that Jordan was a victim of an illegal arrest and
a custodial interrogation. The above fact is in conflict with trial counsel's
testimony, that in his legal opinion, there was no custodial event. This
conflict makes his testimony incredible.
The trial court concluded that counsel testified credibly; that the statement
made by Jordan on the day in question was voluntary and exculpatory. This
conclusion is a mischaracterization of Jordan's trial testimony and in
contradiction to the legal principles that guide a reviewing court. Jordan
testified he "voluntarily" went with the police, after his request to drive
his vehicle was denied. (Certified Record Vol.2 pg.212). Two points support
the statements to be involuntary; one of definition and one of law:

> a) Involuntary, adj. Not resulting from a free and unrestrained
> choice, not subject to control by the will.
> b) <u>Commonwealth v. Williams</u>, 941 A.2d 14, 30 (Panel's opinion
> pg.4)

Therefore, trial counsel's testimony as it pertains to "voluntariness", is
incredible.

### B. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO
### CALL AVAILABLE ALIBI WITNESS(S) AT TRIAL

In the trial court's Notice of Intent to Dismiss pursuant to Pa.R.Crim.P.
§907, it determined that this issue did not warrant relief.
It has been well established that an evidentiary hearing is not an absolute
right of the appellant, as the trial court clearly points out. According
to §907, the court shall review the petition, any answer by the atttorney

18

for the Commonwealth, and other matters of record relating to appellant's claim(s) before dismissing a petition.  Jordan argues that the information provided to the court for this issue was sufficient to warrant an evidentiary hearing.

When raising a failure to call potential witness claim, the PCRA petitioner satisfies the performance and prejudice requirements of <u>Strickland</u>, by establishing that:

> (1) the witness existed; (2) the witness was available to testify for the defense; (3) counsel knew or should have known of the existence of the witness; (4) the witness was willing to testify for the defense; (5) the absence of the testimony of the witness was so prejudicial as to have denied the defendant a fair trial.

Although the trial court identifies the correct governing principle from the <u>Strickland</u> Court which is listed above, the trial extended the legal principle from the Supreme Court's precedent to a new context which falls under the "unreasonable application" clause. The trial court added a sixth factor:

> "Neither affidavit specifically indicates what the testimony would have been had either or both been called."

Petitioner had met the requirements of the "Strickland 5" further inquiry, an evidentiary hearing was warranted on this issue.

To demonstrate <u>Strickland</u> prejudice, the petitioner "must show how the un-called witnesses' testimony would have been beneficial under the circumstances of the case." <u>Commonwealth v. Gibson</u>, 951 A,2d 1110, 1134 (Pa.2008). In the instant case, counsel's failure to call witnesses who could provide testimony that would prove the petitioner's innocence and were known through counsel's investigation, cannot be considered constitutionally effective representation.

The petitioner was prejudiced because the fact-finder did not hear the witness' testimony. The PA Supreme Court has stated that, "alibi is a defense that places the defendant at the relevant time in a place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party." <u>Commonwealth v. Roxberry</u>, 529 Pa.160, 602 A.2d 827 ()quoting <u>Commonwealth v. Jones</u>, 529 Pa.149, 602 A.2d 820, 822 (Pa.1992).

19

The failure to establish an alibi 'contravenes the presumption of innocence
and the Commonwealth's burden of proving the offense beyond a reasonable
doubt.'" Id. Commonwealth v. Johnson, 966 A.2d 523, 538 (Pa.2009)
In the case at bench the Commonwealth relied on testimony from, Crawford,
the sole witness and first responder, Officer Jala, to determine the times
of events on the day in question. Crawford testified that on 11/15/2004 he
was cleaning up trash outside his place of employment, when at about 8:30
a.m. he was approached by the eventual gunman. (Transcript 3/15/2005 p.9).
After a brief conversation the man walked down the street and engaged in
conversation with another man. According to Crawford, approximately fifteen
minutes later Wexler (decedent) arrives to open the business. (Transcript
3/15/2005 p.10). While Wexler and Crawford were opening the store, the man
from earlier came back and forced them into the store at gunpoint. A struggle
between Wexler and the gunman ensued and Wexler was shot and killed.  Jala,
testified that he responded at 8:42 a.m., when he received the call from
police radio. (Certified Record Vol.1 p.50). Jala also testified that he
found Wexler with a gunshot to the head, he called for a medical unit.
(Certified Record Vol.1 p.52). Wexler was pronounced at 8:53 a.m.. This
information was uncontradicted, and and accepted as true. Crawford also
failed to identify Jordan as the perpetrator.
Jordan testified that he was at home with his family, all morning until
approximately 9:00 a.m. during the times of these criminal events. (Certified
Record Vol.2 p.146). There was no testimony or evidence introduced to refute
Jordan's testimony.
Jordan's son was interviewed by Agents on 11/24/2004 and also submitted a
sworn affidavit to PCRA counsel for purpose of this appeal. Both documents
contain information to corroborate Jordan's testimony and clearly establish
an alibi by established criteria set forth by the court in Roxberry.
It would have been impossible for Jordan to be questioning Crawford at 8:30
and waking his son to help Jordan clean up behind his home. It would have
been equally impossible for Jordan to be struggling with and killing Wexler
and cleaning up behind his home and moving his vehicle from the rear of his

20

home to the front of his home.

Jordan's wife stated that she heard him come in the house but she didn't know exactly what time it was. This would have also corroborated Jordan's trial testimony because she heard him come in after he moved the car from the back of this house to the front. This could have been clearly established at trial.

This evidence was material to Jordan's defense and would have raised reasonable doubt before the fact-finder.

In Commonwealth v. Stewart, "an order granting appellee a new trial was proper because he received ineffective assistance of counsel. The evidence was not overwhelming and an alibi witness's testimony that appellee was with her at the time of the commission of the crime could have benefitted him ..." As in the above case the evidence in Jordan's case was not over-whelming and corroboration of his testimony would have resulted in a different outcome.

In U.S. v. McGahee, "held that counsel's failure to call alibi witnesses to testify on defendant's behalf prejudiced defendant, as required to support claim for (IAC).

Jordan had met his burden for post conviction relief pursuant to a Strickland/Pierce analysis and the trial court's decision to not grant relief or schedule an evidentiary hearing was contrary to, or involved an unreasonable application of , clearly established Federal law and resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court. proceeding.


### C. TRIAL COUNSEL WAS INEFFECTIVE FOR FAILURE TO REQUEST AN ALIBI CHARGE BE GIVEN TO THE FACT FINDER

In Commonwealth v. Pounds, 490 Pa.621, 417 A.2d 597 (1980), the court stated:

> "alibi is a defense that places the defendant at the relevant time in a different place than the scene involved and so removed therefrom as to render it impossible for him to be the guilty party."

In Commonwealth v. Whiting, 409 Pa.492, 187 A,2d 563, a defendant is entitled

21

to an alibi instruction when evidence of alibi, as defined above, has been
introduced.

Commonwealth v. Bonomo, 396 Pa.222, 151 A.2d 441; Commonwealth v. Van Wright,
249 Pa.Super. 451, 378 A.2d 382 (1977). Although an alibi defense is
generally presented with accompanying alibi witnesses or other evidence
placing the defendant at a place other than the scene of the crime at the
time of its commission, the testimony of the accused may, by itself, be
sufficient to raise an alibi defense and entitle him to an appropriate
jury instruction.

Defendant has no burden of proving alibi. Bonomo

Where an alibi defense is presented, an alibi instruction is necessary due
to the danger that the failure to prove the defense will be taken by the
jury as a sign of the defendant's guilt. See U.S. v. Ragghianti, 560 F.2d
1376; U.S. v. Burse, 531 F.2d 1151 (2d Cir.1976)

In Pounds the court held unequivocally that "a defendant is entitled to an
alibi instruction when evidence of alibi...has been introduced." Further,
we held in Pounds that "general instructions on the Commonwealth's burden
of proving each element of the offense beyond a reasonable doubt, the absence
of a burden of proof on the defendant, and assessing the credibility of
witnesses do not adequately protect against" the danger posed by the mis-
apprehensions a jury might indulge regarding the relevance and effect of
alibi evidence. Id. at 603.

Jordan was the only witness for the defense,and he testified to an un-
contradicted alibi. That very fact and in light of the above law an alibi
instruction was warranted.

What occurred during the prosecution's closing argument made trial counsel's
duty to request an alibi instruction critical to the defense:

    The following exchange took place (Certified Record Vol.3 p.37)

        Cameron: He say, well I was playing with Joe--I mean, I was my
        son picking up trash out back. Where is the son to say he's out
        back-
        Pagano: Objection
        Court: Sustained
        Cameron: The defendants got no burden of proof in any case, but
        as a juror if you don't hear from somebody, you are allowed to
        draw inferences
        Pagano: Objection. He was just as available to Mr. Cameron.
        Court: Sustained. Move on.

The prosecutor's comments in the context of the facts and circumstances of the entire case, should be considered in the realm of rendering Jordan's trial unfair.

Trial counsel did right by objecting to these statements but he had a duty to go one step further and request the alibi instruction because of the danger of the fact-finder basing their verdict on an improper premise. There was no evidence or testimony to contradict Jordan's testimony. There was no witness that placed Jordan at the scene of the crime at the time it was committed. There was no conclusive evidence that the weapon recovered, was actually the murder weapon. In other words, there was no overwhelming evidence presented by the Commonwealth to prove their case.

Trial counsel's omissions, in the circumstances of this case, so undermined the truth-determining process, that no reliable adjudication of guilt could have taken place.

Counsel had no reasonable basis for his inaction since there was no other defense presented other than alibi.

Trial counsel's inaction warrants per se prejudice, <u>Cronic</u>, coupled with the prosecutor's closing argument and lack of substantial evidence of guilt, the trial court's assessment of this particular claim don't ring true. The trial court's decision is contrary to and involved an unreasonable application of clearly established Federal law, in light of the evidence presented in the state court, the court's decision is unreasonable.

### CUMULATIVE ERROR

A cumulative error analysis merely aggregates all of the errors that individually have been found to be harmless, and therefore not reversible, and it analyzes whether their cumulative effect on the outcome of the trial is such that collectively they can no longer be determined to be harmless. <u>Albrecht v. Horn</u>, 485 F.3d 103,139 (3d Cir.2007)

<u>CONCLUSION</u>

There can be no argument that Petitioner was without counsel at critical stages of the trial process, but counsel's representation was more of a "second prosecutor". <u>Rickman v. Bell</u>, 131 F.3d 1150.  In <u>Fisher v. Gibson</u>, 282 F.3d 1283, counsel ineffective for numerous errors, including presenting no defense theory and to the extent there was any it was alibi only through the defendant's testimony, which counsel undermined.

The trial court abused it's discretion in not granting relief on every issue presented, it's decision is in violation of Federal law.

Petitioner warrants release from custody or in the alternative a new trial.

24

## VERIFICATION

I, Tracy  A. Jordan, Petitioner,Pro-Se, swear and affirm that, the statements made herein this MEMORANDUM OF LAW under the penalties provided under 18 PA.C.S.A. §4904, that the facts contained herein are true and correct to the best of my knowledge, information and belief.

Dated: 23 June 2016                    _____

## PROOF OF SERVICE

I, Tracy Jordan, Petitioner, Pro-Se, hereby certify that the true and correct copies of the foregoing documents were served to the entity indicated below by sending same in the United States First Class Mail, Postage Prepaid which service satisfies the requirements of Pa.R.A.P. Rule 121:

**FILED**
JUN 2 8 2016
MICHAEL E. KUNZ, Clerk
By_____ Dep. Clerk

(one original and two copies)
Eastern District of Pennsylvania/Office of Clerk
United States District Court
Philadelphia, PA 19106-9865
Case# 16-CV-2784

Respectfully Submitted,

Dated: 23 June 2016                    _____
Tracy Jordan, Pro-Se
GV-8258
1 Kelley Drive
Coal Township, PA  17866-1020



RECEIVED
JUN 2 8 2016