# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TRACY JORDAN, | : | CIVIL ACTION |
| Petitioner, | : | |
| | : | |
| v. | : | No. 16-2784 |
| | : | |
| SUPERINTENDENT MCGINLEY, et al., | : | |
| Respondents. | : | |

## REPORT AND RECOMMENDATION

**TIMOTHY R. RICE**  December 15, 2017
**U.S. MAGISTRATE JUDGE**

Petitioner Tracy Jordan, a prisoner at the State Correctional Institution in Coal Township, Pennsylvania, has filed a pro se petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. He argues his counsel was ineffective for failing to: (1) suppress unlawfully obtained evidence, (2) call an alibi witness, and (3) request an alibi jury instruction. Jordan also requested a stay while he litigated an unexhausted claim in state court. I respectfully recommend Jordan's petition and stay request be denied with prejudice.

## FACTUAL AND PROCEDURAL HISTORY

In November 2004, Jordan was arrested for the armed robbery and murder of a check-cashing store owner. Commonwealth v. Jordan, CP-51-CR-0305001-2005, 10/19/2007 Tr. Ct. Op. at 1–2.

Trial testimony established the timeline of the incident: around 8:30 a.m., before the check-cashing store opened, a man approached an employee standing outside. 10/19/2007 Tr. Ct. Op. at 1–2. They exchanged a few words and the man left. Id. About fifteen minutes later, while the employee and store owner were lifting the metal gate in front of the store, the man came up behind them with a gun and pushed them into the store, saying, "You know what this

is." Id. A struggle ensued and the owner was shot. Id. At 8:42, the responding officer received the first radio call about the armed robbery. N.T. 11/02/2006 at 49–50, 175. At 8:53, the victim was pronounced dead. N.T. 11/03/2006 at 11–12.

Police recovered a plastic drawstring bag and a fired cartridge case from inside the store. N.T. 11/02/2006 at 63–65. A fingerprint on the bag was matched to Jordan, and detectives asked him to come in for questioning. N.T. 11/03/2006 at 110–11, 212–13. Jordan asked if he could drive himself to the station, but agreed to go anyway after the officers denied his request. Id. at 212–13.

Jordan told the detectives he had not been to the check-cashing store on the day of the robbery and could not explain how the bag with his fingerprint ended up there. Tracy Jordan Police Interv. at 2–3; N.T. 11/03/2006 at 212–13. He also told them about his wife's .40 caliber semi-automatic Smith & Wesson and consented to a search of his home. Tracy Jordan Police Interv. at 3; N.T. 11/02/2006 at 191–99. Technicians found the gun was consistent with the cartridge case from the crime scene. N.T. 11/03/2006 at 53–67.

Jordan testified that, on the morning of the robbery, he and his son Tracy Jr. were sweeping the driveway and taking out the trash between 8:15 and 8:45, while his wife slept upstairs. N.T. 11/03/2006 at 145–47. Counsel did not call Tracy Jr. to confirm his father's alibi.

The jury convicted Jordan of second-degree murder, robbery, and possessing an instrument of crime. Docket at 6. He was sentenced to life in prison, which the Superior Court affirmed in September 2008. Id. at 6, 15.

In December 2008, Jordan filed a pro se petition for relief under Pennsylvania's Post-Conviction Relief Act, 42 Pa. C.S. § 9524 et seq. ("PCRA"). See Docket at 16. The PCRA court dismissed Jordan's petition in March 2012. Id. at 18. The Superior Court reversed and

remanded for an evidentiary hearing to determine whether: (1) Jordan was subject to custodial interrogation when the police brought him in for questioning, and (2) trial counsel had a reasonable basis for not filing a motion to suppress. See 7/12/2013 Super. Ct. Op at 14. At the hearing, counsel testified that Jordan's police statement was exculpatory and showed he cooperated with police, which fit with the defense strategy. N.T. 12/16/2013 at 10–12. The PCRA court again denied Jordan's petition, and the Superior Court affirmed in October 2015. Docket at 24, 26.

In June 2016, Jordan timely filed his habeas petition.

## DISCUSSION

Before seeking federal habeas relief, a petitioner must exhaust all available state court remedies, "thereby giving the State the opportunity to pass upon and correct alleged violations of its prisoners' federal rights." Baldwin v. Reese, 541 U.S. 27, 29 (2004) (citations omitted); see also 28 U.S.C. § 2254(b)(1). If a claim is preserved but the state court has denied it on its merits, I can grant relief only if the state court's decision: (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States"; or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). This is a "difficult to meet and highly deferential standard . . . which demands that state-court decisions be given the benefit of the doubt." Cullen v. Pinholster, 563 U.S. 170, 181 (2011) (internal quotations omitted).

I.  Ineffective Assistance of Counsel

The clearly established law of Strickland v. Washington, 466 U.S. 668 (1984), governs ineffective assistance of counsel claims. See Williams v. Taylor, 529 U.S. 362, 391 (2000).

3

Two showings must be made to establish ineffectiveness: (1) deficiency, meaning "errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment"; and (2) prejudice, meaning counsel's errors deprived Jordan of "a fair trial . . . whose result is reliable." Strickland, 466 U.S. at 687. Pennsylvania courts apply an equivalent test. See Werts v. Vaughn, 228 F.3d 178, 203 (3d Cir. 2000); Commonwealth v. Sneed, 899 A.2d 1067, 1075–76 (Pa. 2006).

I must be "highly deferential" and "indulge a strong presumption" that counsel's challenged actions were strategic. Strickland, 466 U.S. at 689. Unless a petitioner shows "no sound strategy . . . could have supported" counsel's decisions, see Thomas v. Varner, 428 F.3d 491, 500 (3d Cir. 2005), "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable," Strickland, 466 U.S. at 690. The relevant inquiry is not whether Jordan's counsel was prudent, appropriate, or perfect. Burger v. Kemp, 483 U.S. 776, 794 (1987). Rather, the focus is on ensuring the proceedings resulting in Jordan's conviction and sentence were fair. See Strickland, 466 U.S. at 684–85.

If the state court addressed counsel's effectiveness and applied the correct legal standard, Jordan must show its decision was objectively unreasonable. Woodford v. Visciotti, 537 U.S. 19, 25 (2002). Review of ineffectiveness claims is "doubly deferential," requiring me to give "both the state court and the defense attorney the benefit of the doubt." Burt v. Titlow, 134 S. Ct. 10, 13 (2013); see also Yarborough v. Gentry, 540 U.S. 1, 6 (2003). "[I]t is not enough to convince a federal habeas court that, in its independent judgment," the state court misapplied Strickland. Bell v. Cone, 535 U.S. 685, 699 (2002).

A.      Failure to Suppress Evidence

Jordan argues trial counsel was ineffective for not moving to suppress his police statement and evidence obtained during the search of his home because the police questioned him without providing Miranda warnings.[1]  Pet. 8–8(a); Memo. 4–18.

Counsel testified that he did not move to suppress Jordan's police statement because it was "exculpative" and consistent with Jordan's other discussions with counsel.  N.T. 12/16/2013 at 10.  Counsel's defense strategy, which he discussed with Jordan "many, many times," was to argue that Jordan was "wrongfully accused" and "not involved at all," and therefore cooperative with police efforts.  Id. at 11–12, 34.

The Superior Court found Jordan failed to meet either Strickland prong.  10/14/2015 Super. Ct. Op. at 7–8.  The court credited counsel's belief that Jordan's "cooperation with the investigation, voluntary statement, and consent to the search all bolstered his assertion that he was innocent and had been wrongly accused."  10/14/2015 at 9.  Trial transcripts bear out this strategy.  See N.T. 11/03/2006 at 212 (Jordan's testimony that he voluntarily gave his police statement and cooperated without resistance); id. at 213 (responding affirmatively to counsel's question about whether he went to the police station to "tell them the truth").  The court found

---

[1]      Jordan appears to incorporate an independent Fourth Amendment argument into his claim.  See Memo. 4–6.  This claim, however, was never raised in the state courts.  Because Jordan failed to exhaust this claim and no longer has the right it in state court, it is procedurally defaulted.  See Baldwin v. Reese, 541 U.S. 27, 29 (2004) (petitioner must "fairly present his claim in each appropriate state court" before seeking federal habeas relief); Coleman v. Thompson, 501 U.S. 722, 731–32, 735 n.1 (1991) (if petitioner has failed to exhaust his state remedies and the state court would now refuse to review the claim based on an adequate and independent state procedural rule, I may deny that claim as procedurally defaulted).  To the extent he contends trial counsel was ineffective for failing to raise such a claim, his argument is meritless for the reasons discussed above.

5

counsel's strategy "was not so unreasonable that no competent attorney would have chosen it." 10/14/2015 Super. Ct. Op. at 10.

The Superior Court also found Jordan failed to show prejudice because he "neglected to explain how the Commonwealth used the verified statement against him." Id. at 11. "[E]ven to the extent that the statement could be considered constitutionally infirm, its admissibility inured to [Jordan's] benefit." Id. Because the Superior Court reasonably determined the facts and applied Strickland in an objectively reasonable way, I must defer to its finding that counsel was not ineffective for failing to suppress Jordan's statement. See Woodford, 537 U.S. at 25.

B. Alibi Witness

Jordan argues trial counsel was ineffective for failing to call his son as an alibi witness. Pet. at 12; Memo. at 18–21.

In his PCRA petition, Jordan attached an affidavit from his son describing his willingness to testify and his experience at trial:

> On I believe the second or third day of trial we were instructed by [counsel] that we would be called to testify soon and that we should wait just outside the courtroom until called [because] he didn't want it to seem as if we were simply repeating things that we heard during the first day(s) of trial. When we were not allowed to testify that morning and court broke for lunch I asked [counsel] the reason for us not being called and we were informed that he didn't think that it was a good idea. I asked if my father was aware of this and he told me that he would inform him of this, when court resumed.
>
> Throughout the whole trial, I, as well as a multiple other family members were present and ready to testify. On the last day of trial I remember the prosecution mentioning the fact the we weren't called to testify even though we were Tracy Jordan's character witnesses and his only two witnesses to corroborate his alibi. [Counsel] replied that we had been there everyday of trial and were fully prepared to testify. Though he never gave a reason as to why we weren't called to the stand.

11/05/2008 Aff. of Tracy Jr. (Ex. B of 07/08/2011 Am. PCRA Pet.).

6

In addition to the affidavit, Jordan's PCRA petition contained a quoted paragraph of what Tracy Jr. would say:

> On November 15, 2004, at approximately 8:30 a.m., I was in my bedroom. . . . At this time, my father, Tracy Jordan, Sr. woke me up and asked me to help him clean up the trash in the backyard. . . . He also asked me to take out the trash from our house because it was Monday and Monday was a trash removal day by the City of Philadelphia. I got dressed and I worked with my father taking out the trash and cleaning the alleyway and adjacent property until approximately 9:00 a.m.

Am. PCRA Pet. 08/07/2011 at para. 9. The paragraph cited only to Tracy Jr.'s affidavit, which did not contain the quoted material.

Tracy Jr. also spoke to the police shortly after the crime, telling them he was with his father at 8:45 a.m., then saying he did not know exactly what time his father told him to clean up:

> "Q: Can you remember approximately where you were last Monday, November 15th, at about 8:45 a.m.?
> A: I was in the back of my house, because my dad had told me to sweep up back there, because there was trash and little things on the ground that he wanted me to clean up. My dad was there with me.
> Q: When did your dad tell you this?
> A: It was that morning.
> Q: Do you remember what time?
> A: I don't know."

11/24/2004 Tracy Jordan Jr. Police Interv.

In light of Tracy Jr.'s "inability to accurately place [Jordan] in a different place than the crime scene at the time of the crime such that it was impossible for him to be the perpetrator, and [Jordan's] testimony that he did not leave the house until after 9:00 a.m.," the PCRA court found counsel's decision not to call Tracy Jr. had been strategic and reasonable under the circumstances. 03/31/2012 PCRA Ct. Op. at 8.

The Superior Court affirmed, reasoning that Tracy Jr.'s affidavit was "completely devoid of the substance of the testimony [he] would have given at trial." 07/12/2013 Super. Ct. Op. at 6.

7

"Because he did not establish the contents of his son's testimony," the court explained, "Jordan failed to show that son's testimony would have been helpful in establishing his defense; therefore, trial counsel cannot be found ineffective." Id. at 6. In the alternative, the Superior Court agreed with the PCRA court that Tracy Jr.'s police statement did "not place Jordan in a different place than the crime scene at the relevant time, so it could not have advanced his alibi defense." Id. at 6–7 n.2.

The Superior Court's application of Strickland was objectively reasonable. Tracy Jr.'s only sworn statement failed to explain what he would have testified, and his police statement was ambiguous as to whether he could account for his father's whereabouts during the relevant time period. See Duncan v. Morton, 256 F.3d 189, 201–02 (3d Cir. 2001) (where petitioner's "only evidence regarding the content of [the uncalled witness's] potential testimony [was] an unsworn letter," he could not establish prejudice resulting from counsel's alleged failure to interview that witness); United States v. Gray, 878 F.2d 702, 712 (3d Cir. 1989) (Strickland prejudice "may not be based on mere speculation about what the witnesses [counsel] failed to locate might have said"). It is "not beyond the realm of possibility that a fairminded jurist could conclude that [Jordan] was not prejudiced" by counsel's failure to call Tracy Jr. as an alibi witness. See Woods v. Etherton, 136 S. Ct. 1149, 1152 (2016).

C.  Alibi Jury Instructions

Jordan argues trial counsel was ineffective for failing to request an alibi instruction. Pet. at 10–10(a); Memo. at 21–23. The Superior Court rejected this claim: "Jordan has not alleged, much less established, that trial counsel lacked a reasonable basis for not requesting the instruction or how he has been prejudiced by the lack of an alibi instruction." Super. Ct. Op. 07/12/2013 at 10–11.

8

Jordan alleges that "[t]he state prosecutor asked the factfinder to base their decision on an illegal premise, namely that failure to corroborate an alibi is evidence of a defendant's guilt." Pet. 10(a). He argues that counsel's duty to request the alibi instruction arose when the Commonwealth inappropriately commented during closing, "if you don't hear from somebody, you are allowed to draw inferences." Memo. 22–23 (quoting N.T. 11/06/2006 at 37). The trial judge, however, upheld defense counsel's objection to this remark, and gave a timely cautionary instruction. See N.T. 11/06/2006 at 37; see also N.T. 11/02/2006 at 14–15 (explaining that jurors may not consider evidence to which the judge sustains an objection).

The court also instructed the jury after closing arguments about the prosecution's burden of proof. To find Jordan guilty of second-degree murder, they must find "the following three elements have been proven beyond a reasonable doubt: First, that the defendant killed Harold Wexler; second, that the defendant did so while committing or attempting to commit or fleeing after the commission of a robbery; and, third, that the defendant was acting with malice." N.T. 11/06/2006 at 96–97; see also id. at 77–78, 80, 83–84, 94, 105 (reiterating the "beyond a reasonable doubt" standard); N.T. 11/08/2006 at 3–11 (repeating, in response to written jury questions, the definition of "beyond a reasonable doubt" and the elements of second-degree murder). The jury was clearly instructed that the government had to prove beyond a reasonable doubt that Jordan was at the check-cashing store when the shooting occurred.

Because counsel objected, the objection was sustained, and the court properly instructed the jury about burden of proof, the state court's rejection of Jordan's alibi instruction claim was not an unreasonable application of Strickland. See Echols v. Ricci, 492 Fed. App'x 301, 313 (3d Cir. 2012); Smith v. Horn, 120 F.3d 400, 416 (3d Cir. 1997).

9

II.     Motion to Stay

On November 3, 2016, Jordan requested a stay for an unexhausted claim of prosecutorial misconduct based on analysts' failure to testify about ballistics testing.  See Petr. App. to Stay (doc. 13).  Because Jordan did not raise this claim in his habeas petition, his stay request is denied.  See 11/16/2016 Order (doc. 14); Rhines v. Weber, 544 U.S. 269, 276 (2005).

Accordingly, I make the following:

# R E C O M M E N D A T I O N

AND NOW, on December 15, 2017, it is respectfully recommended that the petition for writ of habeas corpus be DENIED with prejudice. It is further recommended that there is no probable cause to issue a certificate of appealability.[2] Petitioner may file objections to this Report and Recommendation within fourteen days after being served with a copy. See Local Civ. Rule 72.1. Failure to file timely objections may constitute a waiver of any appellate rights. See Leyva, 504 F.3d at 364.

                                       BY THE COURT:

                                       */s/ Timothy R. Rice*_____
                                       TIMOTHY R. RICE
                                       U.S. MAGISTRATE JUDGE

---

[2] Because jurists of reason would not debate my recommended dispositions of the petitioner's claims, no certificate of appealability should be granted. See Slack v. McDaniel, 529 U.S. 473, 484 (2000).